**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 102, et al., Plaintiffs,**

v.

**COUNTY OF SAN DIEGO, Defendant.**

**No. 90–1211–GT–M.**

United States District Court, S.D. California.

Feb. 11, 1992.

Craig Becker, UCLA Law School, Los Angeles, Cal., Robert A. Bush, Jesus E. Quinonez, Hope J. Singer, Taylor, Roth, Bush & Geffner, Burbank, Cal., for plaintiffs.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy, Ian Fan, Deputy, Miriam Milich, Deputy, San Diego, Cal., for defendant.

## ORDER ON PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

GORDON THOMPSON, Jr., District Judge.

Following briefing of these issues by the parties, these motions for partial summary judgment came on for hearing before the Court on February 10, 1992 at 10:30 a.m. The Court has fully considered this matter, including review of the papers filed by the parties, the authorities cited therein, and the arguments presented.

### I

### INTRODUCTION

Plaintiffs' motions for partial summary judgment were presented to the Court on three issues:

(1) Whether the employer's violation was willful, thus entitling plaintiffs to damages for the three years prior to the filing of the complaint, instead of only for the two years clearly authorized by the Fair Labor Standards Act ("FLSA" or the "Act").

(2) Whether the employer's violation was willful, thus entitling plaintiffs to liquidated damages.

(3) Whether plaintiffs are non-salaried employees, and thus not exempt from bringing an action under FLSA.

Additional issues as well were addressed in the moving papers. This opinion will address these motions in two sections, (1) Damages and (2) Exemption from FLSA.

### II

### DAMAGES

#### A. FACTUAL BACKGROUND

Following a complaint filed with the Department of Labor's (DOL's) Wage and Hour Division concerning lack of compensation for on-site back-up duty, the DOL assigned Compliance Officer Dean Smith to meet with various County of San Diego officials. Following his investigation, on July 10, 1987, Smith informed County Labor Relations Specialist Dan Kelley that on-site back-up duty "appears to be hours worked." He explained that the back-up duty was "[h]ours worked because of the restriction on time."

Then, on August 4, 1987, Smith participated in a conference call with Kelley; Merrilyn Carpenter, the Department of Probation's Personnel and Training Administrator; and Pat Mahler, a personnel consultant for the County. During this call, Smith informed these County agents that the work in question was "worktime."

On September 3, 1987, Smith told Kelley that the County should "recompute hours and give back-pay." The next day, Smith stated that "he could put things in writing stating that stand-by should be counted as hours worked," but County officials "discouraged a written letter at [that] time."

In another meeting on September 15, 1987, Kelley took notes, with an asterisk for emphasis, which stated: "Position of DOL is if its on site, some of the time has to be counted hours worked notwithstanding District Court decision," with the reference to District Court decision apparently referring to two decisions from districts in the respective states of Louisiana and Texas.

Despite the oral comments of Smith, the County requested an opinion from the DOL's Regional Solicitor. In a letter dated August 5, 1988, received by the County on August 11, 1988, the Solicitor confirmed Smith's opinion, based primarily on his interpretation of Ninth Circuit law, that on-site back-up duty was compensable work. Upon the receipt of this letter, a County representative wrote back in November, 1988, continuing to contest the finding of the DOL.

This action was commenced on September 17, 1990.

#### B. CONCLUSIONS OF LAW RE: STATUTE OF LIMITATIONS

The statute of limitations for an action under FLSA is two years. However, "a cause of action arising out of a willful violation [may] be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The question in this

case is not whether the action was timely filed, but instead how far back the County will be required to pay damages.

As the action was filed on September 17, 1990, there is no question that plaintiffs may recover damages incurred subsequent to September 17, 1988, two years prior to the filing of the action. In this motion, plaintiffs seek an order by summary judgment that they are entitled to damages for the three years prior to the filing of the complaint, back to September 17, 1987, based on allegations that the violation was willful within the meaning of Section 255(a).

The Supreme Court defined willful in *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). In *McLaughlin,* the Court held that a violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133, 108 S.Ct. at 1681. The currently proposed regulations of the DOL elaborate on this definition of "willful," deeming action willful when it is at variance with advice of the DOL.[1] Although this proposed regulation is only proposed and thus not binding, the proposed regulation embodies the notion that an employer, informed by the DOL that its conduct is in violation of FLSA, knows that its conduct is "prohibited by the statute."

It is clear from the evidence presented that the plaintiffs have shown that the County was aware of the DOL's position. Moreover, the County, despite its reference to the subject in its points and authorities, has not presented the court with any evidence that it was unaware of the DOL's position on this matter. Instead, the County chose to ignore the DOL's findings as given to the County by Mr. Smith and then by the Solicitor in favor of its own view of the law. Quite unlike the situation discussed by the Ninth Circuit in *General Electric Co. v. Porter,* 208 F.2d 805, 816 (9th Cir.), *cert. denied,* 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097 (1954) (employer not in bad faith given "uncertain state of the law"), the law in the Ninth Circuit is settled at this time. *See id.; Kelly v. Ballard,* 298 F.Supp. 1301 (S.D.Cal.1969). As such, the County cannot find safety in its "good faith" challenge to the law based upon decisions in other circuits. Instead, the County, resting in this circuit as it does, must obey the commands of the law in this circuit. Given the well-settled nature of the law, the County's failure to follow the precedent of this circuit clearly was done with knowledge or reckless disregard, and as such was a willful violation of FLSA.

Moreover, even without the DOL finding, given the clear state of the law in this circuit, the County's decision to ignore this law was a violation of the Act. As such, it is not necessary to address plaintiffs argument that the damages be extended back in the alternative to the date of the receipt of the written letter on August 11, 1988. Instead, the plaintiffs, as they have shown that the County was aware of the existing interpretation of the law and chose to ignore it, are entitled to damages for the full three years prior to the filing of the complaint. As a result, plaintiffs are entitled to damages beginning on September 17, 1987.

C. CONCLUSIONS OF LAW RE: LIQUIDATED DAMAGES

■ FLSA provides that an employer who violates the minimum wage or maxi-

---

1. The proposed regulation by the Department of Labor further defines willful:

    A violation shall be deemed to be willful if the employer's actions are at variance with precious advice by the Administrator, or where, as a result of a precious advice of the Administrator, the employer was on notice that it should have inquired further into whether its conduct was in compliance with the Act.

    29 C.F.R. § 578.3(c)(8) (56 Fed.Reg. 25170 (June 3, 1991)). Moreover, the summary of the rule states that:

    A violation shall be deemed to be willful ... whenever the employer's actions are at variance with previous advice by the Administrator, or a Wage–Hour official duly authorized to perform such function, such as where the employer was advised during the course of an investigation of similar or other conduct that the conduct in question constitutes a violation of the Act.

    56 Fed.Reg. 25168 (June 3, 1991).

mum hour provisions "shall be liable for ... the payment of wages lost and an equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are not penal in nature, but instead "constitute[ ] compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). As a result, in a FLSA case, "Double damages are the norm, single damages the exception." *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986).

■ Although FLSA makes the award of liquidated damages mandatory, it created an exception where the court has discretion not to award liquidated damages "if the employer shows ... that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. To benefit from this exception, the employer must pass both a subjective and an objective test. *See* 29 C.F.R. § 790.22(b) ("(1) The employers must show ... that the act or omission giving rise to such action was in good faith; and (2) he must show also ... that he had reasonable grounds for believing that his act or omission was not a violation of the ... Act.")

■ Obviously, if the County's action were "willful" as discussed in the previous section, the County cannot pass this test. Indeed, the County's action were neither subjectively or objectively reasonable. Moreover, a number of decisions have indicated in this area that once DOL has expressed its opinion on an issue, an employer can no longer act to the contrary in good faith. *See, e.g., Hultgren v. Lancaster,* 913 F.2d 498, 509 (8th Cir.1990); *Joiner v. Macon,* 814 F.2d 1537, 1539 (11th Cir.1987); *Richard v. Marriott Corp.,* 549 F.2d 303, 304 (4th Cir.1977); *King v. Board of Education,* 435 F.2d 295, 298 (7th Cir.1970). As a result, the Court must award liquidated damages.

## D. CONCLUSIONS OF LAW RE: SLEEP TIME

■ In the order of April 23, 1991, the court ruled that back-up duty is work even though employees may sleep during some of it. Moreover, the court held that the bargaining agreement could not bar relief. As such, the principles of res judicata bar the County from relitigating the issues of deductions from back-up duty pay for sleep time.

## E. CONCLUSIONS OF LAW RE: MONETARY DAMAGES

■ Incredulously, the County argues that it should be allowed to compensate plaintiffs with time off rather than money damages. The County relies on 29 U.S.C. § 207(*o*), which provides that County employees may receive "in lieu of overtime compensation, compensatory time off" so long as compensatory time off is pursuant to an agreement between the County and its employees. Indeed, the County alleges that an agreement provides for compensatory time off in lieu of overtime compensation. As a result, the County argues that all overtime compensation due to certain members of the plaintiff class as a result this Court's ruling is payable in compensatory time.

Section 16(b) of FLSA provides that an employer who violates the overtime provision shall be liable "in the amount of ... [the employee's] unpaid overtime compensation." 29 U.S.C. § 216(b). The section goes on to provide for recovery of an "equal amount of liquidated damages." *Id.* These sections indicate that Congress clearly contemplated an award of money, not time off. Moreover, the provision in *Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986), for interest on the unpaid compensation in the event no liquidated damages are granted is entirely inconsistent with any type of payment other than money. Having waited until this stage in the litigation, the County is no longer entitled (if such an agreement existed between the parties) to substitute compensatory for unpaid overtime. Instead, the County now

must pay damages in amount equal to the unpaid overtime, and these damages must be paid in money.

Additionally, given the enormous amount of time which plaintiffs will have to be credited, it is unlikely that plaintiffs would ever be able to use such time, which would violate 29 U.S.C. § 207(*o*)(5), which requires that employers which grant compensatory time instead of cash must allow employees to use the accrued time "within a reasonable period." 29 U.S.C. § 207(*o*)(5). As a result, for this independent reason as well, the County should be required to pay the plaintiffs money, rather than compensatory time.

### III

### SALARY EXEMPTION

#### A. FACTUAL BACKGROUND

The County argues that Non–Assistant Deputy Probation Officers ("non-ADPO's") are salaried employees under FLSA. These plaintiffs have set working hours, are required to be at work during these hours, and must record these hours on some form of time sheet or time card. They must seek and obtain permission to be away from work for a short period during these working hours. Indeed, if any of these plaintiffs leave work for even a few hours without seeking and obtaining permission, they are considered AWOL and are subject to discipline. Additionally, plaintiffs must record any time away from work, including absences of less than one day.

When plaintiffs work extra hours, they receive either compensatory time off or straight-time overtime pay.

Prior to March 8, 1991, the County's Salary Ordinance provided:

> No County officer or employee shall receive any compensation or benefits other than as authorized by law, and no County officer or employee shall be compensated for services not actually performed or for hours not actually worked, except for paid leave or compensation provided for herein.

There was evidence that this provision required that employees who took leave of less than one day but did not have available leave balances to cover the time off be docked for the time off. Moreover, plaintiffs allege, and defendants do not offer counter-evidence, that some plaintiffs were actually docked for absences of less than one day.

On March 8, 1991, less than two months after the Supreme Court's denied certiorari in *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), the County Board of Supervisors amended the Compensation Ordinance to alter this policy. The new ordinance provides:

> For purposes of clarifying the meaning of Section 1.2.6 and the meaning of the provisions in this Compensation Ordinance prior to the March 1, 1990 operative date of Section 1.2.6, compensation authorized by law for employees in classes exempt from the provisions of the federal Fair Labor Standards Act who are subject to the salary test set forth in the FLSA regulations includes compensation for periods of absence from work of less than one full regularly scheduled work day for such employees where they have no accumulated paid leave credits applicable to such absence. These employees are salaried employees within the meaning of the FLSA and thereby are entitled to this compensation pursuant to the provisions of the FLSA and its implementing federal regulations. This section merely clarifies compensation rights of employees exempt from FLSA as such rights have existed pursuant to federal law and this Compensation Ordinance.

However, even after March 8, 1991, plaintiffs are required to seek permission to be absent for less than one day, and must use leave time for absences of less than one day if such leave is available. Moreover, sick leave and personal leave is available for plaintiffs' use in as small an increment as one-tenth of an hour.

## B. LEGAL BACKGROUND

FLSA excludes from its protection "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

On September 6, 1991, without notice or comment, the DOL promulgated an emergency regulation. The regulation added subpart 541.5d to 29 C.F.R. § 541 as follows:

A Federal, State or local government employee ("public employee") who otherwise meets the requirements of section 541.118 shall not be disqualified from exemption under sections 541.1, 541.2, or 541.3 of this part on the basis that such employee is paid according to a pay system established by statute, ordinance, regulation or public policy under which the employee accrues personal leave and sick leave and, absent the use of accrued leave (because the leave had been exhausted or by the employee's choice), requires the public employee's pay to be reduced ("leave without pay") for absences, for personal reasons or because of illness or injury, of less than one work-day.

56 Fed.Reg. 45826 (Sept. 6, 1991).

Additionally, the DOL published a proposed regulation which would have maintained the exempt status of employees subject to deductions for absence less than one day prior to the effective date of new section 541.5d if either

(1) no actual deductions had been made prior to the effective date of the new section or

(2) the employer reimbursed the employees for any actual deductions made prior to the effective date of the new section.

56 Fed.Reg. 45830 (Sept. 6, 1991) (proposed 29 C.F.R. § 541.118(a)(6)(iii)). This proposed regulation has not yet been promulgated.

## C. CONCLUSIONS OF LAW

### 1. *The Burden of Proof*

■ Whether the plaintiffs fall within the exempt class, and as a result are ex-empt from the coverage of FLSA, is an affirmative defense. As a result, the employer bears the burden of proof on this issue. *See Abshire v. County of Kern*, 908 F.2d 483, 485–86 (9th Cir.1990). Moreover, not only does the employer bear the burden of proof, but the employer "must show that the employees fit 'plainly and unmistakably within [the exemption's] terms.'" *Id.* at 485 (*citing Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960)).

Despite the clear holding of *Abshire*, the County argues that plaintiffs bear the burden of proof on this affirmative defense because of the manner in which plaintiffs filed their pleadings. However, such a shift in burden does not follow from the plaintiffs' pleadings. *See* Wright and Miller, 5 *Federal Practice and Procedure*, § 1276, at 460–61 ("the court should treat plaintiff's references to the defense [in the pleadings] as surplusage. Inasmuch as plaintiff was not under any obligation to plead on the subject of the anticipated defense, ... it is inappropriate for the court to shift the burden of proof on the anticipated defense to plaintiff....") (citations omitted).

As a result, the County bears the burden of proof on the issue of whether plaintiffs are salaried, and thus exempt from the coverage of FLSA.

### 2. *Non–Assistant Deputy Probation Officer Plaintiffs are Not Exempt from the Coverage of FLSA.*

■ The plain language of FLSA excludes from its coverage "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "The administrative regulations promulgated pursuant to the FLSA establish a 'duties test' and a 'salary test' for determining whether an employee is a bona fide executive." *Abshire*, 908 F.2d at 484 (*citing* 29 C.F.R. § 541.1(a-e); 29 C.F.R. 541.1(f)). "[A]n employer must prove that the employee meets both tests." *Id.* Because the County fails the salary test, it is not necessary to review the duties test.

*   *Plaintiffs are subject to loss of pay for absences of less than one day; plaintiffs work set hours and record their time*

Although the County asserts that "no one has testified about punching a 'time clock,'" plaintiffs are required to work set hours, to seek and obtain permission to be away from work during those hours, and to record the time that they work on some form of time sheet or time card. Moreover, if plaintiffs fail to seek and obtain permission, they are considered AWOL and subject to discipline. Such rigid attendance and time keeping requirements are not consistent with salaried status. *See Abshire*, 908 F.2d at 486 ("A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed.").

Additionally, for an employee to be considered to be paid on a salary basis, the regulations provide that the employee receive "a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.-118(a)(1). Read concurrently with 29 C.F.R. § 541.118(a)(2), which allows for deductions when the employee is absent from work for more than a day at a time, courts have held that loss of pay for absences of less than one day are indicative that an employee is not a salaried employee. *See, e.g., Dole v. Tony and Susan Alamo Foundation*, 915 F.2d 349, 352 (8th Cir. 1990); *Whitmore v. Port Authority*, 907 F.2d 20, 21 (2d Cir.1990). In the Ninth Circuit, the court in *Abshire* directly addressed this issue, holding that "an employee's pay cannot be *subject* to deduction for absences of less than a day." *Abshire*, 908 F.2d at 486.

In this case, clearly up until March 8, 1991, plaintiffs were subject to being docked for absences of less than a day. Prior to that date, the County's Salary Ordinance provided:

> No County officer or employee shall receive any compensation or benefits other than as authorized by law, and no County officer or employee shall be compensated for services not actually performed or for hours not actually worked, except for paid leave or compensation provided herein.

The County provided no evidence that this policy was other than how it reads—that employees were to be docked for hours not worked, even if less than one day.

On March 8, 1991, the County Board of Supervisors amended the ordinance so that it read such that "salaried" employees would not be subject to docking for periods of absence from work for less than one day where they had no accumulated leave time. The new ordinance further stated:

> This section merely clarifies compensation rights of employees exempt from FLSA as such rights have existed pursuant to federal law and this Compensation Ordinance.

Despite the drafting of this last sentence, it is clear that this new ordinance was a change in existing policy. Certainly, the County has not presented evidence to dispute the plaintiffs assertions to the contrary. As such, plaintiffs were subject to docking prior to March 8, 1991.

Moreover, even after March 8, 1991, plaintiffs were required to take leave time for absences of less than a day if such leave was available. Although the Ninth Circuit commented that such leave might be indicative of non-salaried status, it avoided this question in *Abshire*. *Abshire*, 908 F.2d at 487 n. 3 ("a strong argument can be made that even if deductions were required only from fringe benefits such as leave time, and not from base pay, the affected employees would still not qualify as 'salaried'"). Addressing the question at this time, the docking of an employee's leave time for absences from work is as contrary to the notion of salaried status as the docking of base pay. In both instances, the employee's compensation is reduced as a direct consequence of the quantity of hours worked. Such a reduction is entirely inconsistent with salaried status. *See also Thomas v. County of Fairfax*, 758 F.Supp. 353, 366 (E.D.Va.1991) ("docking of one hour's leave ... affronts the concept of a

salaried executive"); *Knecht v. Redwood City*, 683 F.Supp. 1307, 1312 (N.D.Cal. 1987).

* *Plaintiffs receive additional compensation for hours worked in excess of their regularly scheduled hours*

In reference to an overtime pay practice, the Ninth Circuit in *Abshire* stated: "Compensatory time off is provided on an hour-by-hour basis.... Such additional compensation for extra hours worked is ... not generally consistent with salaried status." *Abshire*, 908 F.2d at 486 (*citing Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 184–85 (3d Cir.1988); *Banks v. City of North Little Rock*, 708 F.Supp. 1023, 1024 (E.D.Ark.1988)). *See also Thomas v. County of Fairfax*, 758 F.Supp. 353, 364 (E.D.Va.1991) ("additional pay at an hourly rate for hours worked beyond their regularly scheduled time" is indicative that employees were hourly employees); *York v. Wichita Falls*, 727 F.Supp. 1076, 1082 (N.D.Tex.1989) (overtime pay leads to conclusion that employer "has in fact treated [employees] as nonexempt employees"). In this case, plaintiffs receive either compensatory time off or straight-time overtime pay for extra hours worked. Such payments, contingent on the hours worked, is indicative of hourly, rather than salary, status.

* *Plaintiffs' compensation is calculated by multiplying the number of hours worked times the rate of pay*

The County submitted a portion of its pay ordinance, which provided for the payment of permanent employees at a "bi-weekly rate." Plaintiffs, however, do not dispute this. Instead plaintiffs provided evidence that the policy was a policy in name only, and that the actual practice was that the amount of salary earned during a pay period is computed by multiplying the number of hours worked times the rate of pay. Notably, the County did not provide the Court with any evidence that the policy was followed. As a result, the County has failed to carry its burden of showing that plaintiffs were paid a predetermined amount.

* *Plaintiffs are subject to being suspended without pay for disciplinary reasons*

■ 29 C.F.R. § 541.118(a)(5) provides that: "Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status." 29 C.F.R. § 541.118(a)(5). The regulation further provides an exclusive list of safety rules of major significance. Given the exclusive nature of this regulation, subsection (a)(1)'s requirement which bars deductions for "variations in the quality or quantity of work performed," and the mandate that "[e]xemptions to FLSA are to be narrowly construed in order to further Congress' goal of providing broad federal employment protection," *Abshire*, 908 F.2d at 485, penalties for reasons other than those safety rules explicitly provided for in the subsection (a)(5) must be indicative of hourly status. As the County's Civil Service Rules provide for a variety of causes of suspension, including many unrelated to those safety violation explicitly provided for in subsection (a)(5), the treatment of these employees is inconsistent with salaried status as defined in FLSA.

* *The Window of Correction is Not Available to the County*

■ Finally, the regulation provides for a "window of correction", whereby employers can "retroactively restore exempt status to employees who, *inter alia,* had their pay subjected to reduction for absences of less than a day." *Dole v. Malcolm Pirnie, Inc.*, 758 F.Supp. 899, 904 (S.D.N.Y.1991). The window of correction is not available to the County, however, because the County has not provided evidence to the Court that the deductions were due to "inadvertence or error." *Abshire*, 908 F.2d at 489. Equally important, the County should not be able to utilize the window of correction after litigation has begun. To do otherwise would be to eliminate all incentive employers otherwise might have to comply with the law as they could wait until after they were sued to make reimbursement without interest, thereby escaping liability. Finally, the County has not demonstrated that it

has taken affirmative steps "to identify and reimburse exempt employees whose pay had been inadvertently docked." *Fire Fighters v. Alexandria*, 720 F.Supp. 1230, 1232 (E.D.Va.1989). The County's only evidence in this regard is that after March 9, 1991, employees who themselves initiated an inquiry could obtain reimbursement. Such action is not sufficient.

Each of these reasons independently should stop the County from relying on the window of correction. Combined as they are in the present instance, there can be no question that this final attempt by the County to exempt these plaintiffs from coverage under FLSA must fail.

### 3. *The New Emergency Regulation*

■■■ The Administrative Procedure Act ("APA") requires both notice and an opportunity to comment before the enactment of a proposed regulation. 5 U.S.C. § 553. However, an agency is not required to publish notice of proposed rulemaking if (1) "the agency for good cause finds that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest" or (2) the agency finds "good cause" and announces such cause "with the rule." 5 U.S.C. §§ 553(b)(3)(B) and (d)(3).

The law is well-settled that the good cause exemption is to be interpreted narrowly. *Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir.1982). It is an "emergency procedure," *id.*, and should only be utilized when " 'delay would do real harm.' " *Id. (quoting United States Steel Corp. v. United States EPA*, 595 F.2d 207, 214 (5th Cir.1979)). Indeed, the only sufficient justification offered by the DOL is if public employers are facing "enormous unforeseen liability" under the existing rule. 56 Fed.Reg. 45825 (Sept. 6, 1991).

In the present context, the liability was not unforeseen. Both the salary basis test and its applicability to public employers has been well settled for sometime. *See* Public Law 99–150, § 6 (providing public employers a grace period in which to comply with the salary test following the Supreme Court's ruling in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)). The accrual of additional liability alone is not sufficient to enact a regulation without notice and comment, especially in light of the grace period already afforded public employers by Congress. As a result, the emergency regulation is invalid because its promulgation was not in compliance with the APA. A notice and comment period was required.[2]

### 4. *The Proposed Regulation*

The County requested that the Court stay the portion of the action related to whether plaintiffs are exempt from the coverage of FLSA until after the Secretary of Labor adopts a proposed regulation. The proposed regulation will exempt employees subject to deductions for absence less than one day if either (1) no actual deductions had been made prior to the effective date of the new section or (2) the employer reimbursed the employees for any actual deductions made prior to the effective date of the new section. 56 Fed.Reg. 45830 (Sept. 6, 1991) (proposed 29 C.F.R. § 541.-118(a)(6)(iii)).

Plaintiffs accurately note that there is no guarantee as to when the Secretary of Labor will adopt this proposed regulation. The DOL currently represents that it anticipates such action by June 1992, but there is no guarantee of this. As a result, a stay awaiting the regulation could continue for an indefinite amount of time. Although this is a legitimate concern under any circumstances, it would be lessened if there was the belief that the County would prevail were the stay granted. However, such is not the case.

Importantly, the County has made no factual showing to support its legal assertion that the proposed regulation would change the outcome of this case. As noted, the County bears the burden of proof on this issue, yet the County has not provided

---

**2.** Because the DOL failed to comply with the notice and comment requirement, it is not necessary to address the question of whether the DOL would have the authority to enter this regulation at all.

the Court with evidence that (1) there were no actual deductions or (2) the County reimbursed plaintiffs. If the proposed regulation were in effect today, it would be of no avail to the County. As a result, there has been no showing to support the stay.

Finally, the deduction requirement is only one of the factors in determining salaried status. As a result, even if the proposed regulation would apply, the County will still have failed to satisfy its burden of proof that the non-ADPO's are exempt from coverage under FLSA.

### 5. *Conclusion*

The County has not sustained its burden of showing that plaintiffs are paid on a salary basis. As a result, members of the plaintiff class that the County has sought to exclude are entitled to damages as provided in FLSA.

### IV

### CONCLUSION

IT IS HEREBY ORDERED that plaintiffs' motions for partial summary judgment on the issue of damages are resolved as follows:

(a) Plaintiffs' motion that plaintiffs' receive damages from September 17, 1987, is GRANTED because the County willfully violated FLSA;

(b) Plaintiffs' motion for liquidated damages is GRANTED in an amount equal to the unpaid back-up duty pay for the entire damage period because the County failed both the subjective and objective tests;

(c) Defendant's motion for deductions from back-up duty pay for sleep time is DENIED because the principles of res judicata bar the County from relitigating this issue which was previously resolved by the Court in an order issued on April 23, 1990; and

(d) Defendant's motion that it be entitled to compensate plaintiffs with time off rather than money damages is DENIED because the statute does not contemplate anything other than monetary damages.

IT IS HEREBY FURTHER ORDERED that plaintiffs' motions for partial summary judgment on the issue of exemption from FLSA is GRANTED because:

(a) the County has failed to show that any of the plaintiffs are exempt from coverage under FLSA;

(b) the new regulation is invalid because there was not a notice and comment period; and

(c) the stay requested by the County is denied because the County has not demonstrated that the proposed regulation will result in a different outcome.

IT IS SO ORDERED.