John Q. SULLIVAN, et al., Plaintiffs,

v.

CITY OF PHOENIX, Defendant.

Nos. CIV 91–0557 PHX EHC, CIV
91–0647 PHX EHC and CIV
92–0213 PHX EHC.

United States District Court,
D. Arizona.

Sept. 14, 1993.

Stanley Lubin and Scott James Cooley, Law Offices of Stanley Lubin, Michael Napier, Napier & Jones, PC, Phoenix, AZ, Lisa Kay Hudson, Richards & Pennington, Tucson, AZ, for plaintiffs.

G. Starr Rounds, Jay A. Zweig, Donald Peder Johnsen, Gallagher & Kennedy, Phoenix, AZ, James P. Hendricks, Tempe, AZ, for defendant.

## ORDER

CARROLL, District Judge.

### *Background*

The Plaintiffs worked for the City of Phoenix as police lieutenants, police records and information bureau supervisors, and police or fire communications supervisors. Defendant ("the City") classified Plaintiffs as salaried employees and paid overtime either at their straight hourly wage or by compensatory time equal to the number of hours worked; overtime was not calculated at a rate of one and one-half times an employee's regular pay rate. Plaintiffs allege they have been improperly classified and exempted from the Fair Labor Standards Act ("FLSA") which requires payment of time and one-half for overtime of non-salaried employees.

> An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.118(a).

The dispute turns on whether a public employee can still be classified as a "salaried employee" if the employer has the potential to withhold the employee's base pay for disciplinary purposes following unauthorized absences of less than one day, and on whether the city is exempt from that requirement under a new Labor Department exception for public sector employers. The Plaintiff contends that the Defendant has improperly classified Plaintiffs as salaried employees and must now compensate them for their overtime at the rate of time and one-half.

Plaintiffs have filed a motion for partial summary judgment and Defendant has cross-motioned. Each party claims there is no

material issue of fact and that judgment should be granted as a matter of law. Resolution of these motions must include an evaluation of the FLSA in conjunction with an interim and final regulation adopted by the Department of Labor which create a special category of exemption·for public sector employees.

*Legal Analysis*

Defendant argues summary judgment is appropriate because the final regulation issued by the Department of Labor, effective September 18, 1992 creates a special exemption for governmental employees from the "salary test" generally applied in FLSA cases. Defendant contends the final regulation controls in this case, and that the standards for liability as set out in *Abshire v. County of Kern,* 908 F.2d 483, 484 (9th Cir. 1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 *reh'g denied,* 499 U.S. 932, 111 S.Ct. 1341, 113 L.Ed.2d 272 (1991), no longer apply. The regulation, Section 541.5d of subpart A of part 541 was finalized to read as follows:

> (a) An employee of a public agency who otherwise meets the requirements of § 541.118 shall not be disqualified from exemption under §§ 541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by a statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability,· under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because—
> (1) permission for its use has not been sought or has been sought and denied;
> (2) accrued leave has been exhausted; or
> (3) the employee chooses to use leave without pay.

57 Fed.Reg. 37677 (1992).

1. *Validity of Regulation*

■ Plaintiffs contend that the new regulation is invalid. Under the Administrative Procedure Act ("APA"), the court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). *See Pathfinder Mines Corp. v. Hodel,* 811 F.2d ·1288 (9th Cir.1987). Plaintiffs argue that the new regulation is arbitrary and capricious because the Department failed to enumerate a single good reason for abandoning the salary basis test in the public sector.

The Wage and Hour Division of the Department of Labor has stated that "certain aspects of the 'salary basis' test for distinguishing exempt from nonexempt employees did not serve their intended purpose when applied in the public sector," 57 Fed.Reg. 37670 (1992), and that in the Department's view, those "aspects are not valid indicators of the bona fides of a claimed exception under section 13(a)(1) in the public sector." *Id.* It was the view of the Department of Labor that restricting employees from "salaried" designation if they were subject to theoretical docking for partial-day absences, inappropriately deprived state and local governments of the opportunity to apply the section 13(a)(1) exemption to their employees who would otherwise be properly exempt. *Id.*

Furthermore, the regulation does not completely abolish the salary test in the public sector. Only the portion relating to potential docking for part-day absences was eliminated; the rest of the salary test factors remain intact. The Court concludes that implementation of the regulation was not arbitrary or capricious.

2. *Retroactivity of Regulation*

■ Plaintiffs further assert that even if the regulation is valid, it does not apply retroactively. The City argues that the regulation is "law" and applies to all cases pending at its date of effectiveness. Plaintiffs' contention is correct; the regulation itself has no express language permitting retroactive effect, and neither Congress nor the Department of Labor has given any indication that the Wage and Hour Division has the power to promulgate retroactive rules.

*See Bowen v. Georgetown University Hospital,* 488 U.S. 204, 215, 109 S.Ct. 468, 476, 102 L.Ed.2d 493 (1988). Further, the Department, in explaining why it had withdrawn a proposed remedial rule, 29 CFR 541.-118(a)(6)(ii),[1] explained that it intended to propose specific legislation to address the problem of retroactive liability. Clearly, if the new regulation had been intended to be retroactive, this statement would not have been included as background in the published final rule. 57 Fed.Reg. 37670 (1992). The Defendant may not rely on the regulatory exception for public sector employees until September 18, 1992, the effective date of the final regulation.

### 3. Validity of the Interim Final Rule

■ On September 6, 1991, the Department implemented an Interim Final Rule ("IFR") as an emergency measure to circumvent accrual of liability for parties such as the Defendant. The language of the IFR, 29 CFR § 541.5d, became the prototype for that adopted in the final regulation. However, two district court cases in the Ninth Circuit have addressed the validity of the IFR and held it to be improperly promulgated in violation of the APA's informal rulemaking provisions requiring notice and comment.

There are two possible means by which the rulemaking provisions can be waived. The first is if the regulation is considered interpretive, and the second is under the emergency "good cause" exception to the APA. The courts in these two cases were not persuaded that the IFR was either interpretive or warranted under the emergency "good cause" exception of the APA. *Alex v. California,* 30 WH Cases 1353, 1992 WL 146824 (E.D.Cal.1992); *Service Employees Intern. v. County of San Diego,* 784 F.Supp. 1503 (S.D.Cal.1992); *see also, Lacey v. Indiana State Police Dept.,* 810 F.Supp. 244 (S.D.Ind. 1992).

Interpretive rules "merely clarify or explain existing law or regulations," *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir. 1983)), whereas substantive rules "effect a change in existing law or policy." *Id.* Substantive regulations are those which affect individual rights and obligations. *Chrysler v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). The City contends the IFR recognizes that different policy considerations exist for public employees which warrant different application of the FLSA, and is thus interpretive. Given the history behind the interim rule, this argument is unpersuasive.

The Supreme Court held in *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (overturning *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), that the FLSA applies to states as employers in the same way as private sector employers. After *Garcia,* Congress enacted amendments to the FLSA which created a grace period until April 15, 1986 for implementation and granted some leeway in application of FLSA overtime provisions. *See* Fair Labor Standards Amend-

---

1. Defendant also sought protection under this proposed interim regulation. 29 CFR 541.-118(a)(6) provides:

   § 541.118  Salary basis.
   (a) * * *
   (6) * * *
   (ii) If a Federal, State or local government (i.e. public sector) employer's pay system is as described in
   § 541.5d, and either:
   (A) the public employer has made no actual deductions from the pay of otherwise-exempt public employees for absences, for personal reasons or because of illness or injury, of less than one work-day before the effective date of § 541.5d (i.e.) September 6, 1991); or
   (B) The employer reimburses any otherwise-exempt public employees for deductions from

   salary that were made for absences, for personal reasons or because of illness or injury, of less than one work-day occurring before the effective date of § 541.5d (i.e., September 6, 1991); then eligibility for exemption for public employees who otherwise meet the requirements of § 541.118 and who were subject to such pay system will not be defeated for failure to pay "on a salary basis."
   56 Fed.Reg. 45830 (1991).
   This regulation was intended to be retroactive and would have served as a shield from all liability in this case because the Defendant never actually made any pay deductions under the challenged policy. However, this regulation was never adopted by the Department of Labor, but was instead withdrawn from the final regulation. 57 Fed.Reg. 37670 (1992).

ments of 1985, Pub.L. No. 99–150, §§ 6–8 (1985).

The regulation is clearly substantive. It creates a binding norm affecting individual rights and obligations, which the agency must apply without discretion to an individual and in all circumstances. In effect, this regulation has the power of law and requires notice and comment to fairly bind government employees.

■ The good cause exception is to be "narrowly construed and only reluctantly countenanced" *Alcaraz v. Block,* 746 F.2d 593, 612 (9th Cir.1984); *Buschmann v. Schweiker,* 676 F.2d 352, 357 (9th Cir.1982). The good cause exception is not to be used as an escape hatch to APA provisions for notice and comment. *National Nutritional Foods Assn. v. FDA,* 491 F.2d 1141 (2d Cir.), *cert. denied* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

■ The Department justified emergency enactment of the IFR because governmental employers were exposed to:

potentially enormous and generally unexpected back wage liabilities to employees, some of whom would clearly be exempt if duties and amount of compensation alone were examined. Such unforeseen liabilities could seriously threaten the fiscal integrity of State and local governmental agencies, and could seriously disrupt widespread pay practices that were designed and intended to serve the public trust and were established long before State and local government employees were subject to the Fair Labor Standards Act.

56 Fed.Reg. 45825 (1991). Accrual of liability is not justifiable good cause. *Alex,* 30 WH Cases at 1359, 1992 WL 146824, *7, *see also Levesque v. Block,* 723 F.2d 175 184 (1st Cir.1983) (agency's lack of time and desire to save money not good cause). Additionally, the liability in this instance was not "unforeseen," as the good cause exception requires. "Both the salary basis test and its applicability to public employers [have] been well settled for some time." *Id.* (quoting *SEIU,* 784 F.Supp. at 1512). The Department, as well as all public employers, have had notice of the FLSA applicability since the ruling in

*Garcia* and the FLSA amendments of 1985 which established the effective date of April 5, 1986. The court in *SEIU* specifically noted, "the accrual of additional liability alone is not sufficient to enact a regulation without notice and comment, especially in light of the grace period already afforded public employers by Congress." *SEIU,* 784 F.Supp. at 1512.

The IFR fails both the interpretive rule and the good cause exception test; the IFR will not serve to shield Defendant from liability.

*4. Liability in the Absence of any Protective Regulation*

■ The FLSA definition of a salaried employee, 29 C.F.R. § 541.118(a), when read concurrently with § 541.118(a)(2), which allows deductions for absences of more than a day, has led courts to hold that deductions for less than a day indicate an employee is hourly, not salaried. *Abshire,* 908 F.2d 483. In *Abshire,* Battalion Chiefs within a county's fire department challenged their salaried status under a policy which provided for "deductions for absences from work of less than a day's duration if the absence [could] not be 'covered' or paid as vacation, sick leave, or accrued compensatory time off." *Id.* at 487. There was no evidence that any such deductions had ever occurred, but the court held the "potential" for such deductions is "completely antithetical to the concept of a salaried employee". *Id.* at 486. The dispositive factor in the county's policy was that the employee's pay was subject at all times to deductions for tardiness or other occurrences. "Either pay is fixed and immutable, and not subject to such deductions, or it is contingent." *Id.* at 487 & n. 4.

Plaintiffs argue that the City of Phoenix's policy likewise subjects them to potential deductions for absences of less than a day. The City's policy provides:

Employees in Tables I and II are considered 'salaried' employees under the Fair Labor Standards Act. If these employees are absent for less than a full shift and do not have accrued leave to properly cover the absence, the employee *may* be placed on paid 'City Business' leave for the re-

mainder of the partial shift. (emphasis added).

City of Phoenix, Admin.Reg. 2.21 § 14 (July 1, 1988).

Plaintiffs argue the allocation of "paid City Business leave" is discretionary and arguably such leave might not be approved. Instead the City could dock the employee's base pay and thereby violate the FLSA.

The case at hand is not a perfect fit within *Abshire* parameters. The Kern County provision in *Abshire* subjected employees to improper deductions any time sick, vacation or other leave had been expended, whereas here "potential deductions" exist only for unauthorized absences. It is the City of Phoenix's policy not to make deductions from an employee's pay, but instead to grant "City Business" leave when accrued leave is expended. In fact no deductions were ever made, and no employee was ever denied "City Business" leave.[2] According to Defendant, there was a very limited purpose behind the challenged policy; base pay deductions from an exempt employee were only to be made for disciplinary purposes.

As explained by Philip Kundin, the individual responsible for drafting Admin.Reg. § 2.21, the term "may" was to serve as a disciplinary provision. For example, "given a normal situation, you were to pay for it," Cross-motion for Summary Judgment ("CMSJ") at Attachment A, Deposition, p. 4, ln. 19–24., but it provided for pay deductions "given a situation where an employee decides to leave the work or not report in or just abandons a position, or what have you, . . . ." *Id.* More specifically, deductions could be made if the employee only showed up for the last hour of work, and then demanded pay for the entire shift with no notification and no authorization for leave. *Id.* at 5, ln. 6–9.

In issuing a revised policy dated September 18, 1991, the City Manager attached a cover letter attempting to clarify the City's intent. The letter stated:

> It was never the intent that the language permitted a deduction in pay, much less required such a deduction. Rather, it was the intent of the use of the word 'may' to preserve the City's rights in such circumstances as abandonment of position, insubordination, refusal to accept an assignment, while complying fully with the regulations under the FLSA.

Stipulated Statement of Facts ("SSF"), at Exhibit 7.

Under Ninth Circuit law, even the revised policy, involving potential base pay deductions in limited disciplinary circumstances, also fails and leaves the Plaintiffs in clear violation of FLSA. *SEIU*, 784 F.Supp. at 1511, *Abshire*, 908 F.2d at 488 (limited infrequent or remote nature of a potential deduction is irrelevant, except as frequency may aid in determining whether a certain policy actually exists); *see also, Pautlitz v. City of Naperville*, 781 F.Supp. 1368, (N.D.Ill.1992) (city disciplinary policy of temporary suspension without pay which could be implemented by full days or fractions thereof was antithetical to the notion of salaried employees under FLSA).

The court in *SEIU* specifically addressed whether base pay deductions can be legitimately made for disciplinary purposes without jeopardizing an employee's exempt status under the FLSA. The plaintiffs in *SEIU* were subject to suspension without pay for disciplinary reasons, and the court held the FLSA provides an exclusive list of safety rules of major significance for which pay penalties may be imposed, and that penalties other than those specified are inconsistent with the exemption for salaried status as defined in the FLSA. *SEIU*, 784 F.Supp. at 1511.

Salary deductions appear to be the most persuasive factor in determining salaried status under the FLSA. However, courts also

---

**2.** Some courts have held that a salary was not "subject to a deduction" where there was no evidence that the employee's pay was actually reduced. *Atlanta Professional Firefighters Union v. Atlanta*, 920 F.2d 800 (11th Cir.1991); *Harris v. District of Columbia*, 29 WH Cases 868, 1988 WL 156191 (D.D.C.1989); *D.C. Nurses Ass. v. District of Columbia*, 29 WH Cases 868, 1988 WL 156191 (D.C.C.1988). However, the 9th Circuit has clearly held any potential deduction, including theoretical possibilities are sufficient to defeat an employee's exempt status under FLSA. *Abshire v. Kern County*, 908 F.2d 483, 487–488 & n 4, (9th Cir.1990).

consider other factors such as an employer's practice of paying overtime, or of docking leave time for absences from work. Plaintiffs and Defendant have stipulated to a number of such factors that courts have considered as suggesting an hourly status. These factors include hourly accrual of overtime or compensatory time [3], sick leave and vacation time, and hourly measurements on leave application forms. In addition, a comparison of Class I and Class II exempt, salaried employees shows Class I employees are treated as true salaried employees. For example, they receive compensation for overtime calculated as "E" time which has no relation to actual hours of performance.

The Ninth Circuit, as held in *Abshire*, has chosen to follow the principles laid out in the FLSA which prohibit variations in pay for quality or quantity of work performed and mandates that exemptions to the FLSA be narrowly construed in order to further Congress' goal of providing broad federal employment protection. Given *Abshire* this Court has no choice but to follow its principles.[4] *Abshire* makes it clear that a "potential" base pay deduction violates the definition of a salaried employee under the FLSA. Further, subjecting a salaried employee to deductions for disciplinary reasons is a violation of the FLSA. *Id.; see also, Pautlitz,* 781 F.Supp. at 1372. As this is precisely the explanation and justification offered by Defendant regarding potential deductions which "may" occur under the current or past policy, it is clear that holding Defendant in violation of the FLSA is consistent with Ninth Circuit cases.

### 5. *Damages*

■ A two year statute of limitations exists for filing a case under the FLSA, except that the statute of limitations extends to three years if the cause of action arises from a willful violation of the Act. 29 U.S.C. § 255(a). "[A] violation is wilful if, 'the employer either knew or showed reckless disregard for whether its conduct was prohibited by the statute.'" *SEIU,* 784 F.Supp. at 1506 (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

The parties stipulate that the challenged pay policy was in effect from July 1, 1985 to September 18, 1991. SSF at 19. The Ninth Circuit's opinion in *Abshire* was issued July 11, 1990. Plaintiffs filed their Complaint on April 10, 1991. The IFR which created special provisions for public employees became effective September 6, 1991 and was finalized September 18, 1992.

The Court recognizes that prior to the *Abshire* opinion there were diverging legal theories regarding the applicability of the salary bases test to public service employees. However, the issue was resolved in the Ninth Circuit by the court's holding in *Abshire.* Continuing the policy after *Abshire* raises a clear question of fact in regard to the wilfulness of the Defendant's conduct. Therefore, summary judgment that the statute of limitations and liability exists only for two years is inappropriate.

■ The FLSA also provides for liquidated damages, not as a penalty for misconduct, but as a means of " 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" *SEIU,* 784 F.Supp. at 1507 (quoting *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 705, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945), *reh'g denied,* 325 U.S. 893, 65 S.Ct. 1189, 89 L.Ed. 2005 (1945). "As a result, in a FLSA case, 'Double damages

---

**3.** Consistent with *Abshire*, a Nevada district court held that "receipt of additional compensation, namely straight time pay or compensatory time, for each hour worked, is indicative of Plaintiff's not being paid on a salary basis." *Benzler et al. v. State of Nevada et al.,* 804 F.Supp. 1303 (1992).

**4.** *Service Employees Intern. Union v. County of San Diego,* 784 F.Supp 1503, 1511; *Alex v. Cali-*

*fornia,* 30 WH Cases 1353, 1992 WL 146824 (E.D.Cal.1992); *Black v. City of San Diego,* Civil No. 91–0458(BTM) (S.D.Cal.1992); *Knecht v. City of Redwood City,* 683 F.Supp. 1307, 1311 (N.D.Cal.1987); *see also Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 613 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992); *Dole v. Malcolm Pirnie, Inc.,* 758 F.Supp. 899, 903 (S.D., N.Y.1991); *Keller v. City of Columbus, Ind.,* 778 F.Supp. 1480, 1486 (S.D.Ind.1991).

are the norm, single damages the exception.'" *Id.* (quoting *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986)).

Although liquidated damages are mandatory under the FLSA, there is an exception where the Defendant can show that the act or omission which gave rise to the cause of action was made in good faith and that they had reasonable grounds for believing that they were not violating the FLSA. 29 U.S.C. § 260. This is both a subjective and objective test. Obviously, if the conduct was wilful the Defendant cannot pass the test. *SEIU,* 784 F.Supp. at 1507. Likewise the Defendant fails, if the action was neither subjectively or objectively reasonable. *Id.* For example, a number of decisions indicate that once the Department of Labor expresses an opinion on the legitimacy of an issue, an employer can no longer act to the contrary in good faith. *Id.* (citations omitted). Here, the situation is reversed. The Department of Labor issued an IFR addressing the issue of public employees and excepting them from FLSA salary basis test. Although this Court has determined this IFR to be invalid under notice and hearing requirements of the APA, it is arguable that upon the adoption of the IFR a reasonable basis existed for the Defendant to believe that its policy did not violate the FLSA. Therefore, there is evidence that following September 6, 1991, the effective date of the IFR, the Defendant acted in good faith and during this time period the employees would not be entitled to liquidated damages.

*Conclusion*

The new Regulation finalized by the Department of Labor cannot be applied retroactively and protection from liability under 29 CFR 541.5d exists only from the effective date of September 18, 1992. This Court finds that the IFR is invalid under the rulemaking provisions of the APA and thus offers Defendant no protection. Under *Abshire* and the circumstances of this case, the Defendant's classification of Plaintiffs as salaried employees violates the FLSA; Plaintiffs are entitled to overtime compensation in accordance with the FLSA. Plaintiffs have shown that, even viewed in the light most favorable to Defendant, there is no genuine issue of material fact and Plaintiffs are entitled to summary judgment as a matter of law.

Further, this Court concludes that there are issues of fact as to whether the Defendant acted wilfully so as to extend the statute of limitations to three years. Correspondingly, issues of fact remain concerning the appropriateness of limiting liquidated damages in this case. The Court concludes that summary judgment would not be appropriate for the Defendant on these issues.

Accordingly,

**IT IS ORDERED** granting the Plaintiffs' partial Motion for Summary Judgment (dkt # 14).

**IT IS FURTHER ORDERED** denying the Defendant's Motion for Summary Judgment (dkt # 20).