SERVICE EMPLOYEES INTERNA-
TIONAL UNION, LOCAL 102; Proba-
tion Officers Association; Roslinda Ar-
ellanes; Teresa Ayala; Renee U. Bon-
ner, et al., Plaintiffs–Appellees,

v.

COUNTY OF SAN DIEGO,
Defendant–Appellant.

No. 92–56249.

United States Court of Appeals,
Ninth Circuit.

Argued, Submission Deferred Nov. 5, 1993.

Resubmitted Sept. 22, 1994.

Decided Oct. 5, 1994.

Order and Supplemental Opinion
July 19, 1995.

Ian Fan, Deputy County Counsel, San Diego, CA, Miriam E. Brewster, Deputy County Counsel, San Diego, CA, for defendant-appellant.

Craig Becker, Service Employees Intern. Union, Los Angeles, CA, for plaintiffs-appellees.

Louise H. Renne, City Atty., Jonathan V. Holtzman, Chief Labor Atty., Arthur A. Hartinger, Deputy City Atty., San Francisco, CA, for amicus curiae City and County of San Francisco and Nat'l League of Cities.

Before: BROWNING, BEEZER and TROTT, Circuit Judges.

### ORDER

The opinion filed October 10, 1994, slip op. 12181, and appearing at 35 F.3d 483 (9th Cir.1994) is ordered amended as follows:

[Editor's Note: Amendments incorporated for purposes of publication]

In addition to these amendments, and as part of this order, the panel responds to the petition for rehearing and the suggestion for

rehearing en banc and supplements its opinion published at 35 F.3d 483 (9th Cir.1994).

The full court was then advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.

The petition for rehearing is denied, and the suggestion for rehearing en banc is rejected.

## OPINION

TROTT, Circuit Judge:

Employees of the County of San Diego sued the County of San Diego ("County"), claiming it failed to pay overtime compensation in accordance with the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 201–219. The district court issued three orders granting partial summary judgment for plaintiffs. *See Service Employees Int'l Union, Local 102 v. County of San Diego*, 784 F.Supp. 1503 (S.D.Cal.1992). The court held that plaintiffs were not exempt from FLSA coverage and that, as a matter of law, plaintiffs were entitled to overtime compensation for on-site back-up duty. The County appeals, arguing the FLSA exemption should have precluded liability and that the employees' on-site stand-by time was not "work" as a matter of law.

We hold that the version of the "salary test" in existence prior to September 6, 1991 was invalid in its entirety as applied to the public sector. Thus, we reverse and remand to the district court for further proceedings consistent with this opinion.

## I

County assistant deputy probation officers ("ADPOs"), nurses, and park rangers filed this suit against the County, claiming the County violated the FLSA by failing to pay them overtime for "on-site back-up duty," or "stand-by," time. The County defended by claiming plaintiffs were exempt from FLSA coverage.

The district court issued three orders granting partial summary judgment. On April 23, 1991, the court granted partial summary judgment for plaintiffs on their claim that ADPOs were eligible for overtime during their on-site back-up time. On February 11, 1992, the district court granted partial summary judgment concluding: 1) the three year statute of limitations applied because the County's violations were wilful; 2) the employees were entitled to liquidated damages; and 3) the County improperly exempted the ADPOs as salaried employees. On August 5, 1992, the court granted partial summary judgment, concluding: 1) liquidated damages and the three year statute of limitations should also apply to the nurses and park rangers; and 2) the court's holding in the April 1991 order should apply to nurses and park rangers.

## II

■ The piecemeal nature in which this case was decided creates a jurisdictional question: whether the district court decision is final for purposes of 28 U.S.C. § 1291. "Under the final judgment rule embodied in 28 U.S.C. § 1291, parties may appeal only the final decisions of the district courts. A final judgment ... is a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1074 (9th Cir.1994) (quotation omitted). Partial summary judgment is not an inherently final order, *id.*; *Cheng v. Commissioner*, 878 F.2d 306, 309 (9th Cir.1989), and the orders in the instant case are not final because the district court has not yet calculated damages.

■ The Supreme Court has held that the requirement of finality is to be given a practical construction. *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152–53, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). In *In re Subpoena Served on the California Public Utilities Commission*, 813 F.2d 1473, 1479–80 (9th Cir.1987), however, we observed that the "exercise of appellate jurisdiction in *Gillespie* was based upon the unique circumstances of the case" and noted that the decision should be applied "only sparingly." To

satisfy the practical finality rule, the following factors must be satisfied:

 (1) the [decision appealed] was a "marginally final order," (2) [which] "disposed of an unsettled issue of national significance," (3) review "implemented the same policy Congress sought to promote in § 1292(b)," and (4) the finality issue was not presented to the [appellate court] until argument on the merits, thereby ensuring that policies of judicial economy would not be served by remanding the case with an important unresolved issue.

*Id.* at 1480 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 (1978)); *accord Wabol v. Villacrusis,* 958 F.2d 1450, 1454 (9th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992).

The challenged orders are "marginally final" because the calculation of damages "will not affect the potentially dispositive and obviously central issue" in this case: whether the County employees were exempt from the FLSA. *See Wabol,* 958 F.2d at 1454. Moreover, deciding the merits will dispose of an unsettled issue of national significance. *See id.* at 1455. "Though the remaining [damages calculation] could eventually ascend to this court, this alone should not prevent our adjudication of important and potentially dispositive questions which have been fully briefed and argued." *Id.* Remanding would not promote judicial economy and would "therefore frustrate the very purpose of the final judgment rule." *Id.* Consequently, we have jurisdiction to consider this appeal.

### III

Under the FLSA, employees must ordinarily be paid overtime compensation if they work more than forty hours in one week. 29 U.S.C. § 207(a)(1). However, the FLSA exempts from its overtime rule "any employee employed in a bona fide executive, adminis-

trative, or professional capacity." 29 U.S.C. § 213(a)(1). The County claims the employees who filed this case fall under this exemption.

■ "To fit within the overtime-exempt category for administrative or executive employees, an employee must meet both parts of a two-part test. The first part is a 'duties test.' The second part is a 'salary test.'" *Barner v. City of Novato,* 17 F.3d 1256, 1259–60 (9th Cir.1994) (citations omitted). At issue in the instant case is the salary test promulgated by the Department of Labor ("DOL") in 1954. In essence, such a test provides that, to qualify as an executive, administrator, or professional subject to the exemption, an employee must be compensated on a genuine salary basis. *See* 29 C.F.R. § 541.118(a). Failure to satisfy the salary test alone ordinarily will result in the loss of the exemption. *See Abshire v. County of Kern,* 908 F.2d 483, 484–85 (9th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). The district court concluded that the County did not satisfy the salary test and therefore could not claim the executive or administrative exemption.

■ "An employee is compensated on a salary basis only if his compensation is *not* subject to reduction based on the 'quality or quantity of the work performed.'" [1] *Hurley v. Oregon,* 27 F.3d 392, 394 (9th Cir.1994); *see* 29 C.F.R. § 541.118(a). Exemptions to the FLSA are to be narrowly construed, and the employer bears the burden of proof to show "the employees fit 'plainly and unmistakenly within [the exemption's] terms.'" *Abshire,* 908 F.2d at 485–86.

■ The County argues for the first time on appeal that the history of the salary test indicates that the version of that test in existence prior to its revision in 1991 and 1992 by the Department of Labor should not apply to public employees, a claim that has not yet been addressed by this circuit. We

---

1. 29 C.F.R. § 541.118(a) states:

 An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.

generally will not consider an argument for the first time on appeal, except if "the issue on appeal is purely one of law that is both central to the case and important to the public." *Yuckert v. Heckler,* 774 F.2d 1365, 1367 (9th Cir.1985), *rev'd on other grounds,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The D.C. Circuit refused to consider a similar issue for the first time on appeal in *Kinney v. District of Columbia,* 994 F.2d 6, 9–10 (D.C.Cir.1993). However, because "consideration of the issue will not require the parties to develop new facts" and the validity of the regulation "presents a significant question of general impact," we will consider the argument. *See Yuckert,* 774 F.2d at 1367.

■ The County contends that the regulation adopting the relevant "salary test" is invalid because it is contrary to the FLSA and congressional intent. The Administrative Procedure Act ("APA") reflects the familiar principle that courts reviewing agency action will "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), the Supreme Court further defined this test. It stated that if Congress has directly spoken to a precise question and the intent of Congress is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* If the "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. Thus, we must first determine whether Congress directly addressed whether the salary test should apply to the public sector.

The DOL enacted the regulation that formulated the salary test twenty years before Congress amended the FLSA to apply to public employers. In 1974, Congress extended the FLSA's coverage to all public sector employees. Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, § 6, 88 Stat. 55, 59–63. Two years later, the Supreme Court held that the FLSA could not be applied to state and local government employees. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Supreme Court overruled this holding in 1985. *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Congress then amended the FLSA in an effort to accommodate "the particular needs and circumstances of the States and their political subdivisions," S.Rep. No. 159, 99th Cong., 7 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651, 655, but did not specifically address whether the salary test should apply to the public sector, *see* Fair Labor Standards Amendments of 1985, Pub.L. No. 99–150, 99 Stat. 787.

The legislative history of the 1974 amendments indicates that Congress intended the executive and administrative exception to apply to the public sector. It stated that "the bill extends minimum wage and overtime coverage to about 5 million *non-supervisory* employees in the public sector." H.R.Rep. No. 913, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837 (emphasis added) [hereinafter House Report]. The 1974 amendment did not otherwise define "non-supervisory employees," so we assume Congress must have been referring to those not exempt under the executive and administrative exception. When Congress again amended the FLSA in 1985, it did not make reference to the executive and administrative exception. It therefore must have intended the executive and administrative exception to continue to apply to the public sector. Congress, however, was silent as to whether the 1954 salary test should apply to the public sector, so we must determine "whether the agency's answer is based on a permissible construction of the [FLSA]." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782.

Unfortunately, the agency's "answer" has been entirely unclear. In 1987 the DOL realized that its 1954 salary test conflicted with numerous state and local statutory provisions prohibiting employees from being paid for time not actually worked, so it announced it would not enforce any aspect of

the salary test with respect to public employers, pending revision of its regulations. *See* 57 Fed.Reg. 37,668 (1992). However, the DOL did not bar employees' claims against public employers. *See id.* ("This nonenforcement policy is not intended to affect any employee's rights under section 16(b) of FLSA."). As a result, the issue continued to be debated in the courts. On September 6, 1991, the DOL passed an interim final regulation, suspending application of the salary test to public sector employees "paid according to a pay system that requires the use of paid leave and, absent the use of paid leave, reduces the employee's pay for absences of less than one work-day." 56 Fed.Reg. 45,824 (1991). This permitted local governments to continue to use pay systems based on public accountability "without incurring liability for overtime pay under FLSA." 57 Fed.Reg. 37,670 (1992). On August 19, 1992, the DOL published its final regulation which states:

> An employee of a public agency who otherwise meets the requirements of § 541.118 shall not be disqualified from exemption under §§ 541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability....

*Id.* at 37,677 (codified at 29 C.F.R. § 541.5d (1993)). It issued the final regulation because "certain aspects of the 'salary basis' test for distinguishing exempt from nonex-

empt employees did not serve their intended purpose when applied to the public sector." *Id.* at 37,670.

At the time the County allegedly incurred liability, the DOL had not yet issued the 1991 regulation amending application of the salary test to the public sector. It had merely adopted its non-enforcement policy. Appellant argues the salary test, as it existed prior to September 6, 1991, is invalid as applied to the public sector because it was not reasonably related to the underlying purpose of the statute. *See American Paper Inst., Inc. v. American Elec. Power Serv. Corp.*, 461 U.S. 402, 423, 103 S.Ct. 1921, 1933, 76 L.Ed.2d 22 (1983) (to determine whether an agency complied with the APA, courts "need only conclude that [a regulation] is *a* reasonable interpretation of the relevant [statutory] provisions"); *Mourning v. Family Publications Serv.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). This argument has merit.

▆▆▆▆ By making the FLSA applicable to the public sector, Congress intended the public sector to pay its employees overtime, but it also intended the executive and administrative exception to apply to the public sector. *See* House Report, *supra.* However, because virtually all public employers are constrained by pay systems based on public accountability,[2] most public employees could not satisfy the salary test as it existed prior to September 6, 1991.[3] And because such

---

2. Public accountability is the notion that "governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for expenditure of public funds." *Hilbert v. District of Columbia*, 23 F.3d 429, 435 (D.C.Cir.1994) (Henderson, J., concurring in part, dissenting in part) (quotation omitted).

3. The district court erroneously held that the interim final regulation, which the DOL enacted on September 6, 1991, was invalid because the DOL did not adhere to the APA. The APA requires an agency to publish a notice of proposed rulemaking and accept comments 30 days before the rule's effective date, unless the agency has good cause not to do so. 5 U.S.C. § 553(d)(3). To avail itself of this exception, the agency must determine " 'that compliance with the 30–day requirement is either impracticable, unnecessary or contrary to the public interest.' " *Buschmann v. Schweiker*, 676 F.2d 352, 356 (9th Cir.1982) (quoting *Kelly v. United States Dep't of the Interi-*

or, 339 F.Supp. 1095, 1101 (E.D.Cal.1972)). The DOL explained that prior notice and comment were contrary to public interest because application of § 541.118 to public employees could result in "enormous, unforeseen liability of [State and local] governments and may threaten their fiscal integrity." 56 Fed.Reg. 45,825 (1991).

The district court rejected the DOL's decision to waive the notice and comment period because the DOL did not act in 1986, when § 541.118 first became applicable to the public sector, but waited until 1991 to enact the interim final rule. Yet the urgency to which the DOL was reacting did not arise until after 1987, when it became clear the federal courts were issuing conflicting decisions and local governments were therefore unable to predict whether they were complying with § 541.118. *See* 57 Fed.Reg. 37,669 nn. 4–7 (1992); 56 Fed.Reg. 45,825 (1991) (stating that the September 1991 regulation was a response to "diverging judicial interpretations and accompa-

public employees failed to satisfy the salary test, they could not qualify for the executive and administrative exemption. The significance of this is that the test deprived public entities of the white collar exemption created by Congress. Thus, the 1954 salary test clearly conflicted with congressional intent that public sector employers be able to claim the administrative and executive exception.[4]

The DOL's August 1992 regulation is evidence that the pre–1991–92 salary test is not reasonably related to the executive and administrative exemption, as applied to the public sector. In enacting the 1992 regulation, the DOL stated:

> [I]t is clear from a plain reading of FLSA's legislative history in 1974 ... that Congress intended for the section 13(a)(1) exemption to be available for public sector employees. Congress presumably was unaware that, because many public sector compensation systems preclude payment for hours not worked, these systems would, solely for that reason, be found to fail to meet the regulatory "salary basis" component of the exemption. In light of public accountability principles prevalent in public sector pay systems, the regulatory requirements adopted before Congress extended the FLSA coverage to State and local governments simply could not operate in a manner that effectively distinguished exempt from non-exempt public employees. The regulations were thus out of harmony with the intent of the statute because State and local governments could

not practically avail themselves of the exemption intended by Congress, and thus were inappropriate as applied in the public sector.

57 Fed.Reg. 37,672 (1992). The 1992 regulation properly amends the salary test as applied to the public sector, so that the salary test now takes into account long-standing and reasonable state and local ordinances predicated on public accountability.

The D.C. Circuit has suggested the DOL's "statements cannot be taken to mean ... that DOL declared its own regulation contrary to the statute and invalid *ab initio.*" *Kinney,* 994 F.2d at 10. We disagree. The DOL initially intended the 1992 amendment to the salary test to apply retroactively, *see* 57 Fed.Reg. 37,678, but the DOL withdrew the regulation because it concluded that such a change would have constituted invalid retroactive rulemaking under *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988).[5] We believe the DOL's interest in applying the new salary test retroactively is indicative of its firm conviction that its earlier iteration of the salary test conflicted with congressional intent. We share this conviction.

We therefore conclude that the salary test, 29 C.F.R. § 541.118, as it existed before the DOL suspended its application to public employers on September 6, 1991, was invalid in its entirety as it applied to the public sector. As the DOL said in 1992, the regulations were "out of harmony" with Congressional

---

nying confusion" which resulted in "the exposure of governmental employers to potentially enormous and generally unexpected" liability).

The "good cause" exception to the APA should be sparingly used in order to promote public input into agency rulemaking. *Buschmann,* 676 F.2d at 357. Nevertheless, by September 1991, the DOL was already reviewing public comments submitted in response to the DOL's advance notice of proposed rulemaking in 1985. *See* 56 Fed.Reg. 45,825 (1991). The public was not deprived of its input.

We have also stated that "[t]he notice and comment procedures in Section 553 should be waived only when 'delay would do real harm.'" *Buschmann,* 676 F.2d at 357 (quoting *United States Steel Corp. v. United States Envtl. Protection Agency,* 595 F.2d 207, 214 (5th Cir.), *amended,* 598 F.2d 915 (5th Cir.1979)). Such was the case here. Every day that the DOL delayed

clarifying its regulation was another day that state and local governments might be exposed to unforeseen liability. This is just the type of emergency situation in which the "good cause" exception should apply.

**4.** Although this Circuit has not previously considered this argument, some judges have found it convincing. *See, e.g., Hilbert,* 23 F.3d at 435 (Henderson, J., concurring in part, dissenting in part); *Stewart v. City & County of San Francisco,* 834 F.Supp. 1233, 1235–38 (N.D.Cal.1993).

**5.** In *Bowen,* the Supreme Court held that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." 488 U.S. at 208, 109 S.Ct. at 472.

intent and inappropriate as applied to the public sector. Because the test's basic infirmity lies in its definition of what it means to be paid on a 'salary basis,' *see* 29 C.F.R. § 541.118(a), salvaging those contingent aspects of the regulation that qualify and provide exceptions to the initial definition, *see* 29 C.F.R. §§ 541.118(a)(1)–(6), (b), (c), is inappropriate. To do so would be tantamount to rulemaking, a power with which we are not invested.

Moreover, the nonenforcement policy covered the entire salary test, not just part of it; and essentially *no* valid salary test applicable to the public sector existed until the DOL finally conducted rulemaking in 1991 and 1992. Thus, through September 6, 1991, for public sector employees to qualify for the executive and administrative exception to the FLSA, they need only have satisfied the duties test.

Appellees argue that our decision to invalidate a portion of the salary test as applied to public employers is inconsistent with *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir. 1990) *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), "and innumerable other federal court decisions applying the test in the public sector." *Abshire* and the other cases to which appellees refer dealt with various questions relating to the proper interpretation of the salary test regulation. *See Barner v. City of Novato*, 17 F.3d 1256 (9th Cir.1994); *Hurley v. Oregon*, 27 F.3d 392 (9th Cir.1994). None of these cases considered or decided the validity of the regulation as applied to the public sector. They do not conflict in any way with our conclusion that application of a portion of the regulation to the public sector is contrary to the statute and therefore invalid.

We remand to the district court to determine whether plaintiffs were exempt from the FLSA under the duties test.

### IV

#### 1. Overtime Pay

Also at issue in this case is whether assistant deputy probation officers, nurses, and park rangers are entitled to overtime pay for standby time. The County says they are not.

The district court disagreed with the County and granted summary judgment on this issue to the employees.

Resolution of these issues depends in turn on whether the employees were "engaged to wait," or whether they were "waiting to be engaged." *Skidmore v. Swift & Co.*, 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). In this respect, employees are "engaged to wait," or working, only if standby and night duty are "primarily for the benefit" of the County. *Armour & Co. v. Wantock*, 323 U.S. 126, 132, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). The factors to be determined in making this determination are:

> (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether the use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time....

and the agreement between the parties. *Owens v. Local No. 169*, 971 F.2d 347, 351, 354 (9th Cir.1992) (footnotes omitted). No one factor is dispositive.

#### a. ADPOs

Undisputed evidence shows ADPOs are assigned to on-site back-up duty, during which they "stand by at the work site before or after [their] normal work period and [are] ready to return to work." Their Memorandum of Agreement (MOA) with the County indicates they are paid $18 for each such shift, and if called to active duty they are additionally paid the overtime rate (time and one-half). While on back-up, ADPOs must remain in camp unless they obtain prior permission of the supervisor on shift, and (not surprisingly) they cannot bring alcoholic beverages, nonprescription drugs or marijuana onto the premises. Some ADPOs reside permanently at the work sites while others do not.

ADPOs assigned to back-up duty can exchange shifts, are given sleeping quarters and shower facilities, and have access to weight-lifting equipment, a pool table, a satellite TV and a staff lounge. From 1988 through 1990, ADPOs were called back to work on 8, 5, and 10 occasions respectively. Appellant presents evidence that ADPOs consider these shifts a benefit.

This is a closer case than *Owens*. During the shift, there is an on-premises living requirement and strict geographical restrictions on employees' movements. However, the record shows the actual calls are infrequent, the on-call employee can trade on-call responsibilities, and employees do engage in personal activities. The employment agreement between the parties suggests they envisioned on-site night duty as work. Construing the evidence in the light most favorable to appellant, we affirm the district court's grant of summary judgment in favor of the ADPOs who do not permanently reside at their work sites: their back-up duty was work; but reverse and remand as to the ADPOs who do permanently reside at such locations.

#### b. nurses

After working a shift, a nurse is appointed stand-by duty at a probation facility from 8:00 pm to 6:00 am. The nurses must remain at the facility, abide by rules governing staff at the facility, and keep their supervisor informed of their whereabouts. The nurses are paid for one hour at the regular rate, unless called to full duty, and they are provided sleeping, living, bath and kitchen facilities. However, the resolution of their status was decided on the basis of the invalid salary test. Therefore, we reverse the district court's summary judgment with respect to the nurses, and remand for further proceedings.

#### c. park rangers

 The rangers work regular shifts, four or five days a week, and then are assigned to night duty, but they perform this duty in their own homes. During this time they cannot leave the park, must remain ready to respond to inquiries and enforce park rules, and abide by rules governing employee conduct. They are given two hours of pay, unless called to perform tasks beyond those normally associated with night duty. Of the seven rangers in this suit, five reside on County property. Because rangers are on stand-by at their residence, they most certainly engage in personal activities during the periods in dispute.

DOL regulations state that because it is difficult to determine the exact hours worked when an employee resides on his or her employer's premises, "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." 29 C.F.R. § 785.23. The district court held the regulation was "not necessarily applicable where ... there are restrictions upon the individuals' freedom," which suggests an employee is engaged in work if an employer places *any* restrictions on the employee. The flexibility of the test established by the Supreme Court suggests the district courts' approach was improper. *See Skidmore*, 323 U.S. at 137–40, 65 S.Ct. at 163–64. The record does not demonstrate that night duty time was so restricted that it could not be used for personal activities. Accordingly, on this issue we reverse the district court's summary judgment.

#### 2. Statute of limitations and liquidated damages

 As to the standby claims, the district court imposed a three year statute of limitations for a willful violation of the FLSA pursuant to 29 U.S.C. § 255(a), and awarded liquidated damages pursuant to 29 U.S.C. § 216(b). As we read the record, both determinations were mistaken. We are unable to identify *any* knowing or reckless conduct on behalf of the County in this regard. In fact, the County relied on substantial legal authority when it decided not to compensate for standing time as well as consulting experts and the DOL in an attempt to comply with the law. *See Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 918 (8th Cir.1991) (reliance on experts is a badge of good faith); *Hultgren v. County of Lancaster*, 913 F.2d 498, 506–510 (8th Cir.1990) (the uncertainty about the application of the FLSA and con-

sultation with counsel shed light on whether the employer had an honest intention to comply). Any conclusion that the County's behavior was deliberate or willful is clearly wrong, and we reverse with respect to the extended statute of limitations as well as the award of liquidated damages, the allotment of which constituted an abuse of discretion. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) (a violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.").

*3. Exclusion of sleep and meal time*

██ Appellants argue that if stand-by time is work time, then sleep time and meal periods should be excluded from the work period pursuant to 29 C.F.R. § 785.22 (1992). That regulation states that if "an employee is required to be on duty for 24 hours or more, *the employer and the employee may agree* to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period...." 29 C.F.R. § 785.22 (emphasis added). Appellant argues appellees implicitly agreed to exclude sleep and meal time in their MOAs. The regulation does not say such an agreement may be implied, and there is nothing in the MOAs to suggest time was deducted for meal periods or "regularly scheduled sleeping periods." Accordingly, meal and sleep time should not be deducted from the relevant work periods.

REVERSED and REMANDED.

## SUPPLEMENTAL OPINION

The opinion in this case, *SEIU v. County of San Diego*, 35 F.3d 483 (9th Cir.1994), is supplemented as follows:

## PER CURIAM:

██ Predictably, the appellees in this case have filed a petition for rehearing and a suggestion for rehearing en banc from our invalidation of the Department of Labor's pre-September 6, 1991 version of the "salary test" as applied to the public sector in connection with overtime compensation.[1] Not so predictably, the Department of Labor ("DOL") has filed an amicus brief in support of the appellees' supplication. Stripped to its essentials, the DOL's position (in which the appellees have joined) is that we are required by *Chevron*[2] and its progeny to defer to the DOL's professed "interpretation" of the statutes it administers. The DOL claims its standard pre–1991 salary test relating to the white-collar exemption must control the outcome of this case. We respectfully disagree.

In an ordinary case, of course, the DOL would be correct regarding our obligation to defer. In this case, however, after conscientiously re-examining the entire record of the DOL's attention (or lack thereof) to the controlling issue, we conclude that the DOL's pre-September, 1991 "position" was not an engaged interpretation of the statute in the light of Congressional intent. Instead, between 1986 and 1991, the DOL simply defaulted on its mandate to interpret the Fair Labor Standards Act and to recast the relevant regulations in the light of a sea change caused by the extension in 1985 and 1986 of the FLSA to nonfederal public employers. The DOL's inaction in this regard runs counter to *Chevron* itself which points out that "to engage in informed rulemaking, [an agency] must consider varying interpretations and the wisdom of its policy on a continuing basis." *Id.* at 863–64, 104 S.Ct. at 2792; *see also Addison v. Holly Hill Fruit Products*, 322 U.S. 607, 617, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944) (Exemptions from the FLSA's controlling provisions relating to minimum wages or maximum hours are "part of a legislative code 'subject to continuous revision with the changing course of events.'") (quoting *U.S. v. Classic*, 313 U.S. 299, 316, 61 S.Ct. 1031, 1038, 85 L.Ed. 1368 (1941)).

As briefly as possible, we shall explain why we see the DOL's "position" on this subject as a *lack* of an interpretation of the relevant

---

1. The appellants have filed a petition for rehearing to which we respond by amendments to our original opinion.

2. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–845, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

statutes rather than an informed position to which we must defer.

The salary basis test—which is wholly a creation of the DOL—was designed in a context in 1940 that did not include governmental employees. Exemptions from Minimum Wage and Overtime Compensation Requirements of the Fair Labor Standards Act; Public Sector Employers, *see* 57 Fed.Reg. 37,666 (1992). When the FLSA was extended to nonfederal public employees in 1985 and 1986 as a result of the Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), a new context was created, one which the DOL should have promptly addressed. The DOL admits it immediately recognized this responsibility and the need to accommodate in its regulations widespread public pay practices based on principles of public accountability of public employees. As the DOL said in an amicus brief[3] filed in 1993 in *Stewart, et al. v. City and County of San Francisco, et al.*, 834 F.Supp. 1233 (N.D.Cal.1993), "When Congress passed the 1974 and the 1985 Amendments to the FLSA, it surely intended the section 13(a)(1) exemption to be available to public sector employers." Moreover, the DOL knew at least in 1986 that the existing salary basis test seriously interfered with the FLSA's white collar exemptions in the public sector. To quote from the DOL's historical record of these events,

> Thus all public employees under such systems, including highly-compensated managers who otherwise would clearly be exempt from the overtime requirements, could be classified as non-salaried and thus non-exempt. As a consequence, few public employers compensated employees in a manner that would satisfy the "on a salary basis" provision required by the regulations.

57 Fed.Reg. 37,666–37,667 (1992).

Motivated by this mismatch between the regulations and the world of public employers, the DOL promised on January 16, 1987 to use rulemaking to address what it called an "anomaly." Virtually simultaneously, the DOL's Wage and Hour Administrator ("Ad-

ministrator") issued on January 9, 1987 a revealing "enforcement" policy containing this language:

> It has come to our attention that some State and local government jurisdictions have statutory provisions which prohibit any employee from being paid for time not actually worked, or not covered by annual, sick, or other type of paid leave. Such statutory provisions conflict with the salary basis of payment described in § 541.118 of 29 CFR Part 541....

> Revisions to the provisions of 29 CFR part 541, *including the salary tests*, have been under consideration as indicated in the Advance Notice of Proposed Rulemaking (ANPR) published in the Federal Register on November 19, 1985....

> While consideration is being given to proposed changes in the regulations, a nonenforcement policy is being adopted with regard to the salary basis of payment for otherwise exempt public employees....

57 Fed.Reg. 37,666–37,668 (1992) (emphasis added). This nonenforcement policy is tantamount to an admission by the DOL that the regulation in place, i.e., the salary basis test, was unsuitable as applied to public employees.

Remarkably, however, the DOL accompanied its nonenforcement policy with an express statement by the Administrator that the policy was "not intended to affect any employee's rights [to file private lawsuits] under section 16(b) of the FLSA." *Id.* In effect, the DOL abdicated its central role in this evolving process and punted, sending the salary basis test and the overtime compensation issue to the courts.

Worse yet, the promised rulemaking did not immediately materialize. *Four years* passed with the nonenforcement policy in place and no definitive activity by the DOL to address this pressing problem. In the meanwhile, public employers and public employees found themselves in complex litigation trying to grapple with these pressing

---

**3.** We take judicial notice of this document which is part of an official federal court record.

issues on which the DOL should have provided guidance, but did not.

The precipitating event that finally awakened the DOL (almost five years after *Garcia*) to its unmet responsibility was our decision in *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). In the tumultuous wake of *Abshire*, the DOL conceded that its nonenforcement policy and its deference to the courts, coupled with its own failure to act, had resulted in an open Pandora's box.

> The courts have interpreted the construction of the [salary test] regulations in different ways, reaching different results.
>
> . . . .
>
> Such judicial interpretations and accompanying confusion were exposing governmental employers to potentially enormous and generally unexpected back wage liabilities for many employees who would clearly be exempt but for the treatment of leave and the docking of pay for partial-day absences when leave was unavailable. Following the denial of certiorari (January 1991) and petition for rehearing (March 1991) in Abshire, representatives of State and local governments ... presented their urgent concerns to the Department arising from the flood of lawsuits being filed by public employees and requested prompt action by the Department to address the matter in light of the anticipated effects of post-Abshire litigation.
>
> These State and local government representatives indicated that, without immediate action by the Department of Labor to revise the regulations for State and local governments, the potential liabilities for affected governmental entities would become devastating....

57 Fed.Reg. 37,666–37,669 (1992).

The DOL has made another telling admission:

> With regard to the public sector, ... it is clear to the Department, after review of all the comments, that certain aspects of the "salary basis" test for distinguishing exempt from nonexempt employees *did not serve their intended purpose when applied*

*to the public sector*, as aspects of the "salary basis" requirement are *unduly restrictive* when applied in the public sector.

57 Fed.Reg. 37,666–37,670 (1992) (emphasis added). What the DOL meant by "unduly restrictive" is found in the same publication—we quoted it before, we'll quote it again:

> However, it is clear from a plain reading of FLSA's legislative history in 1974 (quoted in section II.B. above) that Congress intended for the section 13(a)(1) exemption to be available for public sector employees. Congress presumably was unaware that, because many public sector compensation systems preclude payment for hours not worked, these systems would, solely for that reason, be found to fail to meet the regulatory "salary basis" component of the exemption. In light of the public accountability principles prevalent in public sector pay systems, the regulatory requirements adopted before Congress extended FLSA coverage to State and local governments *simply could not operate in a manner that effectively distinguished exempt from nonexempt public employees. The regulations were thus out of harmony with the intent of the statute* because State and local governments could not practically avail themselves of the exemption intended by Congress, and thus were inappropriate as applied in the public sector.

57 Fed.Reg. 37,672 (1992) (emphasis added). The DOL knew of this mismatch no later than January 16, 1987 when it promised rulemaking to rectify the predicament.

The DOL has admitted it defaulted on its responsibility promptly to update the regulations, and it did not make a real effort to do so until the courts (in its view) had confused the issue. Moreover, when the DOL finally got around to it in 1992, it confessed that the regulations to which it now says we should defer were not suitable for the public sector and "out of harmony" with the intent of the statute, a realization to which it should have responded with appropriate rulemaking in 1987 at the latest.

Under these circumstances, the DOL's request for deference to an *interpretation it never rendered—an interpretation which in*

*any event would have been wrong*—is unusual, to say the least. With this unexemplary history in mind, the DOL—which has caused much of this sea of troubles—should not be surprised that we have determined its nonenforcement regulatory vacuum to have been arbitrary, capricious, and thus an abuse of discretion, entitled to no deference at all. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.

The peculiar circumstances of this case stand as an example of when *Chevron's* basic principle of deference does *not* control our decision. *See Vierra v. Rubin,* 915 F.2d 1372, 1376 (9th Cir.1990) ("A court may invalidate an agency regulation . . . if legislative history reveals a clear expression of congressional intent that runs contrary to the regulation."); *cf. Thomas Jefferson Univ. v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2388, 129 L.Ed.2d 405 (1994) ("[A]n agency's interpretation of a statute or regulation that conflicts with a prior interpretation is 'entitled to considerably less deference' than a consistently held agency view.") (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, n. 30, 107 S.Ct. 1207, 1221, n. 30, 94 L.Ed.2d 434 (1987)) (quoting *Watt v. Alaska,* 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981)); *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 260, 111 S.Ct. 1227, 1236, 113 L.Ed.2d 274 (1991) (Scalia, J., concurring in part and concurring in judgment) (explaining that "deference is not abdication, and it requires us to accept only those agency interpretations that are reasonable in light of construction courts normally employ").

In sum, we are asked to defer to the DOL's *failure* to discharge its responsibilities under the law and to apply in a pending lawsuit a regulation that is manifestly inappropriate. We decline this wondrous strange offer. As the Supreme Court said in *Chevron,* "The Judiciary is the final authority on issues of statutory construction which are contrary to clear congressional intent." 467 U.S. at 843, n. 9, 104 S.Ct. at 2782, n. 9 (citations omitted).

In reviewing this case, we have considered also the other arguments made by the appellees and the amici in connection with the petition for rehearing, and we do not find them persuasive.

As to certain arguments advanced by the appellants in their petition for rehearing, however, we have concluded they are correct. Our original opinion relating to the nurses, some of the ADPOs, the extended statute of limitations, and liquidated damages has been amended accordingly.

With the ordered amendments to the original opinion and this per curiam opinion, the panel has voted unanimously to deny the petition for rehearing and to reject the suggestion for rehearing en banc.