DECISION
Appellants William R. Worley, Robert Wright, John Neal, Gary Auffart, Daniel R. Kuhn, Jr., Timothy McDonald, and David P. Hill have appealed the judgment of the trial court denying them overtime compensation in connection with their employment by the city of Cincinnati. Although appellants now contend that Robert Wright is no longer a party to this appeal, the record establishes that all appellants, including Wright, have appealed the trial court's judgment. Because we hold that the trial court did not err in determining that the appellants were exempt employees as defined under the Fair Labor Standards Act[1] and were not entitled to the overtime compensation, we affirm the judgment of the trial court.
 A. Background
The appellants in this case are, or were at one time, assistant fire chiefs for the city of Cincinnati. In the early 1990s, several important changes were made within the fire division. Of relevance in this case are the modifications made to an assistant fire chief's duties. At the request of William Gustavson, then the city's safety director, a study was conducted on "premium pay" (pay given in addition to base pay) for the fire chief and assistant fire chiefs. Based on the study, Gustavson concluded that the fire chief and assistant fire chiefs were receiving an excessive amount of overtime pay. Because he considered this pay to be a "gross abuse of the taxpayer dollar," he discontinued overtime pay, placed the assistant fire chiefs on a salary, and eventually increased their base pay.
Under the current system, the assistant fire chiefs are considered next in command to the fire chief. In particular, an assistant fire chief supervises one of the four bureaus in the fire division, which include the Operations Bureau, the Administrative Bureau, the Personnel Training Bureau, and the Environmental Safety Services Bureau. Each assistant fire chief also acts as a duty chief on a rotating basis. As a duty chief, each assistant fire chief must remain ready and available in the evenings and on the weekends to respond to certain delineated emergency situations. The assistant fire chiefs are not compensated for the additional hours worked as a duty chief.
Worley, Wright, Neal, and Auffart filed their original complaint against the city of Cincinnati, Shirey, Ryan, William Gustavson, and the Cincinnati Civil Service Commission on February 13, 1997. The complaint was amended twice to include appellants Kuhn, McDonald, and Hill and to remove defendant Gustavson. The final version of the complaint asserted nine claims against the city, Shirey, Ryan, and the civil service commission. Essentially, the allegations in the complaint centered on the following five issues: (1) whether the appellees had violated Section 201 et seq., Title 29, U.S. Code, Section 1983, Title 42, U.S. Code, R.C. Chapter 4111.01 et seq., and/or R.C. 124.18 by failing to compensate the appellants for working overtime hours; (2) whether the appellees had failed to comply with R.C. 124.01 etseq., and the rules of the commission by amending the duties and responsibilities of the assistant chiefs to reinstitute "on-call" duties; (3) whether the appellees' actions constituted bad faith, negligent infliction of emotional distress, or intentional infliction of emotional distress; (4) whether the appellees had breached an agreement when reinstituting "on-call" and when refusing to pay overtime compensation for "on-call" duties; and (5) whether the decision of the civil service commission should be overturned.
Though it is not demonstrated in the record, apparently the issue of damages was bifurcated from the issue of liability, and a bench trial was conducted on the issue of liability only. After the trial, the court issued a lengthy decision holding that the appellants were exempt employees and were not entitled to overtime compensation. The court then awarded a judgment entry formally disposing of all the claims against the city of Cincinnati. That entry states the following in pertinent part:
 Upon full consideration of the record herein, the written memoranda of both parties, and oral arguments of counsel for both parties, this Court finds that the defendant City of Cincinnati is entitled judgment as a matter of law on all issues.
 IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Court hereby renders judgment in favor of the defendant City of Cincinnati in accordance with the Court's written opinion which is attached hereto as "Exhibit A" and dismisses this matter with prejudice at plaintiff's costs.
This appeal ensued.
 B. Jurisdictional Issues
Before turning to the merits of the assigned errors, we must first address the procedural morass reflected in the record of the proceedings below. It is well established that, in order to vest this court with subject-matter jurisdiction, the order appealed from must be a final, appealable order.[2] To determine whether an order is final and appealable, we must engage in a two-step analysis.[3] First, we must determine whether the order is final within the meaning of R.C. 2505.02.[4] Second, if the order is final under the law, then we must decide whether Civ.R. 54(B) language is required.[5]
Under R.C. 2505.02, a final order includes, an order affecting a substantial right in an action which in effect determines the action and prevents a judgment. An order meets the requirements of R.C. 2505.02 if the effect of the order is to determine the action and the order prevents a judgment by rendering moot any unadjudicated claims involving other parties. Where a trial court enters a final judgment as to fewer than all the claims or parties, Civ.R. 54(B) requires that it make an express determination that "there is no just reason for delay" for appealing the judgment. Without this express determination, an order adjudicating fewer than all the claims does not terminate the action as to any of the claims or parties.[6] However, the Ohio Supreme Court has stated,
 [E]ven though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable.[7]
Consequently, the use of Civ.R. 54(B) language is not required to create a final, appealable order where the resolution of one claim renders any others moot.
This case involves multiple claims and multiple parties, but the judgment being appealed neither disposes of the remaining claims against Shirey, Ryan, and the civil service commission nor contains Civ.R. 54(B) language that "there is no just reason for delay." Arguably, the judgment is not a final, appealable order giving us jurisdiction to review the case. However, because the claims against Shirey, Ryan, and the civil service commission were in essence the same claims as those made against the city, we are persuaded that the judgment effectively resolved all of the claims against all of the parties. In effect, the appellants' claims against Shirey, Ryan, and the civil service commission were indirectly resolved by the failure of their claims against the city, notwithstanding the absence of any explicit reference to them in the court's entry. As a result, we determine that the judgment of the trial court is final and appealable, and we proceed to exercise our jurisdiction in this case by reviewing the appellants' three assignments of error.
 C. Assignments of Error
The first assignment is that the trial court erred by placing the burden of proving non-exempt status on the appellants. In the second, the appellants assert that the trial court erred in finding that they were exempt employees under the salary-basis test of the Fair Labor Standards Act ("FLSA"). The third is that the trial court erred in finding that the appellants were exempt employees under the duties test of the FLSA. Because we hold that the trial court did not err in finding that appellants were exempt employees under the FLSA and were not entitled to overtime compensation, we overrule the assignments of error, which, for the sake of clarity, we address in the aggregate.
The FLSA was enacted by Congress to protect all covered workers from substandard wages and oppressive working hours and working conditions so that covered, non-exempt employees could receive, at least, the federal minimum wage for hours worked and overtime compensation for all hours worked over forty hours per week.[8] Originally, the FLSA did not apply to public employers or employees, but in 1974 Congress enacted amendments that brought public employees within its scope.[9] Although the Supreme Court first held that Congress could not apply the FLSA to public-sector employees,[10] the Court later overruled that decision and upheld the constitutionality of the FLSA as it applies to public-sector employees.[11] Thus, it is now well established that public employees fall within the scope of the FLSA.
Under the FLSA, employers are required to pay overtime compensation for work performed in excess of forty hours per week.[12] But "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the overtime provision.[13] This exemption must be narrowly construed in order to further Congress's goal of providing employment protection.[14] While the exempt terms are not specifically defined under the FLSA,[15] the operative definitions have been provided by the Department of Labor ("DOL") under the Code of Federal Regulations ("C.F.R.") and are entitled to judicial deference.[16] According to the C.F.R., the courts should engage in a two-part analysis the "salary-basis test" and the "duties test" in order to determine whether particular employees are exempt.[17]
 1. Salary-Basis Test
To satisfy the salary-basis test, the employer must prove that the employees are paid on a salary basis rather than hourly.[18] Pursuant to Section 541.118(a), Title 29, C.F.R., an employee is paid on a salary basis where the employee regularly receives a predetermined amount constituting all or part of the employee's compensation each pay period, and that amount is not subject to reduction because of variations in the quality or quantity of work performed. Salary deductions made for absences of a day or more that occur for personal reasons or due to sickness generally do not affect an employee's salaried status,[19] but deductions for absences of less than a day are considered inconsistent with salary status.[20]
At the time the FLSA became applicable to public employees, an unexpected conflict arose. The salary-basis test effectively prohibited partial-day deductions, but many public employers had existing pay systems requiring that partial-day deductions be made pursuant to principles of public accountability.[21] As a result, public employees who otherwise would have been considered administrators, executives, or professionals were losing their exempt status.[22] In response, the DOL passed an interim regulation suspending the salary test as it applied to public-sector employees where an employee was paid according to a pay system based on public-accountability laws.[23] On August 19, 1992, the DOL published its final regulation, which provides the following:
 An employee of a public agency who otherwise meets the requirements of [the salary test] shall not be disqualified from exemption under [the executive, administrative, and professional exempt regulations] on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because —
 permission for its use has not been sought or has been sought and denied;
accrued leave has been exhausted; or
 the employee chooses to use leave without pay. [Emphasis added.][24]
Basically, under the regulation, if a public sector employer deducts for personal absences of less than one day, an employee will not lose his exempt status where the pay system is founded upon public-accountability laws or principles. The concept of public accountability "is derived from the desires of taxpayers that their government be accountable to them for expenditures from the public treasuries."[25] While we recognize that the public-accountability exception allows a public employer to keep its leave system and yet take advantage of the FLSA's exemption, an employer must nevertheless establish that its pay system originated for reasons relating to public-accountability laws or principles.[26]
It is uncontroverted that the appellants' salaries, as assistant fire chiefs, were reduced for absences of less than one day. As a result, the question before us is whether the trial court erred in determining that the appellants fell within the boundaries of the salary-basis test. Specifically, we must determine whether the record supports the trial court's determination that the appellees provided sufficient evidence that the city's pay system was based on public-accountability laws or principles.
With respect to public accountability, the trial court stated:
 In this case, one can see in the record, the active policies of the City of Cincinnati through its Personnel Policies 
Procedures Manual on the issue of deductions as pertaining to the Assistant Fire Chiefs. Coupled with Mr. Wagner's testimony and using the Stewart standard, the City of Cincinnati has availed itself of this test.
The record reveals the following relating to public accountability. Frank Spataro, the city's assistant director of personnel, testified that he was responsible for determining which city employees should be considered exempt. In the case of the assistant fire chiefs, he determined that their duties made them exempt from the FLSA. Further, former safety director Gustavson stated that, because the assistant chiefs performed administrative and managerial duties, they had always been considered exempt employees. Additionally, Francis Wagner, the city superintendent of accounts and audits, testified that, pursuant to the "SCC" and the state auditor's office, the city had to account for its expenditures. In particular, he noted that the city was subject to independent audits to determine the accuracy of the city's financial reports. Wagner stated that, in order to comply with the applicable principles of accounting, city employees were paid for hours worked or hours claimed as leave time, but that they could not be paid for work not performed.
Based on this evidence, we cannot say that the trial court erred as a matter of law in determining that the city's policies were based on principles of public accountability. Although it is uncontroverted that the city had no known written policy relating to public accountability, the record establishes that the city had an existing policy of refusing to pay its employees for work not performed. As a result, we hold that the trial court did not err in determining that the appellants fell within the confines of the salary-basis test.
 2. Duties Test
To satisfy the duties test, the employer must demonstrate that an employee's position is either executive, administrative, or professional, as defined by the C.F.R.[27] The appellants suggest that it is unclear whether the trial court determined that they were executive or administrative employees. But, based on our review of the court's decision, it appears that there was actually a determination of whether the appellants were administrative employees.
An employee with a salary not less than $250 per week, qualifies as an administrator where his primary duties consist of the performance of office or nonmanual work related to management polices or general business operations, and where the employee customarily and regularly exercises discretion and independent judgment.[28] The principles applicable to whether an employee's primary duty is management also apply in analyzing whether an employee's primary duty is administrative, albeit with a focus on administrative duties.[29] Thus, to determine that an employee works in an administrative capacity requires proof that the employee spends over half his time on administrative duties, or that the administrative duties have a special significance relative to the employee's other duties.[30]
The trial court began its analysis by determining that the appellants, as assistant fire chiefs, engaged in administrative activities because they "serve[d] as conduits, obtain[ed] data and information and [made] recommendations up the chain of command to the Fire Chief and receiv[ed] instructions and directions, which [were] passed on down the chain of command." The trial court also determined that the appellants engaged in "white-collar" work. The court further found that, despite appellants assertions to the contrary, the testimony of Wright, Kuhn, Neal, Auffart, McDonald, and Hill demonstrated that the appellants had engaged in administrative duties by acting as administrators of each individual bureau and by carrying out the orders of the fire chief. Specifically, the court stated that the appellants, as assistant fire chiefs, "spen[t] a large portion of their time not only reviewing and following policy procedures but * * * executing [them] and making sure [they were] followed properly." Finally, the court found that the appellants exercised discretion and independent judgment as assistant fire chiefs in managing fire scenes and in administrating their individual bureaus.
After reviewing the record, we conclude that the trial court did not err in finding that the duties performed by the assistant fire chiefs made them administrators exempt from the FLSA. Each assistant chief was placed in charge of one of the fire division's four bureaus, and each was responsible for supervising and managing a bureau on behalf of the fire chief.[31] The assistant chiefs were also responsible for acting as duty chiefs on a rotating basis. Essentially, their work consisted of advising the fire chief, managing and supervising the bureaus and fire scenes as duty chiefs, and representing the fire department.[32] The assistant chiefs also made recommendations to the fire chief and carried out the business policies of the fire chief and the fire division.[33] Furthermore, as bureau supervisors and duty chiefs, the assistant chiefs typically exercised discretion and independent judgment when carrying out their duties.[34]
Based on the evidence in the record, we conclude that the trial court appropriately found that the appellants were exempt employees under the FLSA because their primary duties were administrative. Accordingly, we hold that the trial court did not err in determining that the appellants fell within the boundaries of the duties test.
 D. Conclusion
In sum, we hold that the trial court did not err in concluding that the appellants were exempt from the overtime provisions of the FLSA, because the appellees presented sufficient evidence under the salary-basis test and the duties test to show that the appellants were bona fide administrators and were not entitled to overtime compensation under the FLSA. Accordingly, we overrule the second and third assignments of error. Further, we conclude that, although the trial court may have misplaced the burden of proof under the duties test, no prejudice is demonstrated in view of the support for the trial court's findings relating to the duties test. As a result, we overrule the first assignment of error and affirm the judgment of the trial court.
Gorman, P.J., Sundermann and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] See, generally, Section 201 et seq., Title 29, U.S. Code.
[2] See Section 3(B)(2), Article IV, Ohio Constitution; R.C.2505.03(A).
[3] See Gen. Acc. Ins. Co. v. Ins. Co. of North America (1989),44 Ohio St.3d 17, 21, 540 N.E.2d 266, 271.
[4] See id.; Noble v. Colwell (1989), 44 Ohio St.3d 92,540 N.E.2d 1381, syllabus.
[5] See Gen. Acc. Ins. Co. v. Ins. Co. of North America, supra;Noble v. Colwell, supra.
[6] See Civ.R. 54(B).
[7] Gen. Acc. Ins. Co. v. Ins. Co. of North America, supra, at 21, 540 N.E.2d at 270-271 (citing Wise v. Gursky (1981), 66 Ohio St.2d 241,421 N.E.2d 150).
[8] See Barentine v. Arkansas-Best Freight Sys., Inc. (1981),450 U.S. 728, 739, 101 S.Ct. 1437, 1444; 57 F.R. 37666.
[9] See, generally, Auer v. Robbins (1997), 519 U.S. 452, 457,117 S.Ct. 905, 909; 57 F.R. 37667.
[10] See Natl. League of Cities v. Usery (1976), 426 U.S. 833,96 S.Ct. 2465.
[11] See Garcia v. San Antonio Metro. Transit Auth. (1985),469 U.S. 528, 105 S.Ct. 1005 (overruling Natl. League of Cities v.Usery, supra).
[12] See Section 207(a)(1), Title 29, U.S.Code.
[13] See Section 213(a)(1), Title 29, U.S.Code.
[14] See Douglas v. Argo-Tech Co. (C.A.6, 1997), 113 F.3d 67,70; Michigan Assn. of Governmental Emp. v. Michigan Dept. of Corr.
(C.A.6, 1993), 992 F.2d 82, 83.
[15] See Section 213(a)(1), Title 29, U.S. Code.
[16] See Udall v. Tallman (1965), 380 U.S. 1, 16, 85 S.Ct. 792,801.
[17] See Sections 541.1, 541.2, 541.3 and 541.118, Title 29, C.F.R. See, also, Barner v. City of Novato (C.A.9, 1994),17 F.3d 1256, 1259-1260.
[18] See Section 541.118(a), Title 29, C.F.R.; Michigan Assn.of Governmental Emp. v. Michigan Dept. of Corr., supra, at 83.
[19] See Section 541.118(a), Title 29, C.F.R.
[20] See id. at 84.
[21] See Spralding v. City of Tulsa (C.A. 10, 1996),95 F.3d 1492, 1496; Service Emp. Internatl. Union v. County of San Diego
(C.A. 9, 1994), 60 F.3d 1346, 1351-1352; 57 F.R. 37667.
[22] See 57 F.R. 37667.
[23] See Spralding v. City of Tulsa, supra, at 1496; ServiceEmp. Internatl. Union v. County of San Diego, supra;57 F.R. 37670.
[24] Section 541.5d, Title 29, C.F.R.
[25] 57 F.R. 37676.
[26] See Spralding v. City of Tulsa, supra, at 1499; ServiceEmp. Internatl. Union v. County of San Diego, supra, at 1351-1354.
[27] See Sections 541.1, 541.2, 541.3, Title 29, C.F.R.;Douglas v. Argo-Tech Co, supra.
[28] Section 541.2, Title 29, C.F.R.
[29] See Section 541.206, Title 29, C.F.R.
[30] See Section 541.103, Title 29, C.F.R.
[31] See Sections 541.103, 541.205, Title 29, C.F.R.
[32] See Section 541.205(b), Title 29, C.F.R.
[33] See Section 541.205(c), Title 29, C.F.R.
[34] See Section 541.207, Title 29, C.F.R.